APPEAL,CLOSED,TYPE–C

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:17–cv–00285–JDB

IGLESIAS v. UNITED STATES AGENCY FOR
INTERNATIONAL DEVELOPMENT
Assigned to: Judge John D. Bates
Cause: 28:7422 Appeal from Administrative Decision

Date Filed: 02/14/2017
Date Terminated: 10/12/2018
Jury Demand: None
Nature of Suit: 899 Administrative
Procedure Act/Review or Appeal of
Agency Decision
Jurisdiction: Federal Question

**Petitioner**

**LIKZA IGLESIAS**                    represented by    **Daniel S. Crowley**
HANNON LAW GROUP
333 8th Street, NE
Washington, DC 20002
(202) 232–1907
Email: dcrowley@hannonlawgroup.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**J. Michael Hannon**
HANNON LAW GROUP
333 8th Street, NE
Washington, DC 20002
(202) 232–1907
Fax: (202) 232–3704
Email: jhannon@hannonlawgroup.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Karey L. Hart**
HANNON LAW GROUP, LLP
333 8th Street, N.E.
Washington, DC 20002
(202) 232–1907
Email: khart@hannonlawgroup.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Respondent**

**UNITED STATES AGENCY FOR**          represented by    **Fred Elmore Haynes**
**INTERNATIONAL DEVELOPMENT**                           U.S. ATTORNEY'S OFFICE FOR THE
DISTRICT OF COLUMBIA
555 Fourth Street, NW

Washington, DC 20530
(202) 252–2550
Email: fred.haynes@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 02/14/2017 | 1 | | COMPLAINT *(Petition for Review of Agency Decision)* against LIKZA IGLESIAS ( Filing fee $ 400 receipt number 0090–4841729) filed by LIKZA IGLESIAS. (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit Exhibit 1 – Final Decision of Foreign Service Grievance Board)(Crowley, Daniel) (Entered: 02/14/2017) |
| 02/15/2017 | | | Case Assigned to Judge John D. Bates. (zsb) (Entered: 02/15/2017) |
| 02/15/2017 | | | SUMMONS Not Issued as to UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, US Attorney, and US Attorney General.....(SUMMONS NOT SUBMITTED AT THE TIME COMPLAINT WAS FILED). (Entered: 02/15/2017) |
| 03/01/2017 | 2 | | REQUEST FOR SUMMONS TO ISSUE re 1 Complaint, filed by LIZA IGLESIAS. Related document: 1 Complaint, filed by LIZA IGLESIAS.(Hannon, J.) (Entered: 03/01/2017) |
| 03/02/2017 | 3 | | SUMMONS (2) Issued Electronically as to UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT. (Attachments: # 1 Notice and Consent)(znmw) (Entered: 03/02/2017) |
| 05/09/2017 | 4 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General March 17, 2017. (Attachments: # 1 Exhibit)(Hannon, J.) (Entered: 05/09/2017) |
| 05/09/2017 | 5 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 3/13/2017. Answer due for ALL FEDERAL DEFENDANTS by 5/12/2017. (Attachments: # 1 Exhibit Certified Mail Receipt)(Hannon, J.) (Entered: 05/09/2017) |
| 05/09/2017 | 6 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT served on 3/15/2017 (Attachments: # 1 Exhibit Certified Mail Receipt, # 2 Affidavit Affidavit of Service, # 3 Exhibit Certified Mail Receipt)(Hannon, J.) (Entered: 05/09/2017) |
| 05/09/2017 | 7 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT served on 3/16/2017 (Attachments: # 1 Exhibit Certified Mail Receipt)(Hannon, J.) (Entered: 05/09/2017) |
| 05/09/2017 | 8 | | MOTION to Dismiss *for Failure to State a Claim* by UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT (Haynes, Fred) (Entered: 05/09/2017) |

| 05/16/2017 | 9 | | MOTION for Extension of Time to File Response/Reply as to 8 MOTION to Dismiss *for Failure to State a Claim* by LIZA IGLESIAS (Hannon, J.) (Entered: 05/16/2017) |
|---|---|---|---|
| 05/17/2017 | | | MINUTE ORDER: Upon consideration of 9 the plaintiff's consent motion for an extension of time to file a response, it is hereby ORDERED that the motion is GRANTED; it is further ORDERED that plaintiff shall file her opposition by not later than May 30, 2017. Signed by Judge John D. Bates on 05/17/17. (lcjdb1) (Entered: 05/17/2017) |
| 05/18/2017 | | | Set/Reset Deadlines: Response to Dispositive Motion due by 5/30/2017. (tb) (Entered: 05/18/2017) |
| 05/30/2017 | 10 | | Consent MOTION for Extension of Time to *Respond and/or Amend* by LIZA IGLESIAS (Hannon, J.) (Entered: 05/30/2017) |
| 05/31/2017 | | | MINUTE ORDER: Upon consideration of 10 the plaintiff's consent motion for an extension of time, it is hereby ORDERED that the motion is GRANTED; it is further ORDERED that the plaintiff shall file her opposition by not later than June 13, 2017. Signed by Judge John D. Bates on 05/31/17. (lcjdb1) (Entered: 05/31/2017) |
| 06/01/2017 | | | Set/Reset Deadlines: Response due by 6/13/2017. (tb) (Entered: 06/01/2017) |
| 06/13/2017 | 11 | | Consent MOTION for Extension of Time to File Response/Reply as to 8 MOTION to Dismiss *for Failure to State a Claim* by LIZA IGLESIAS (Attachments: # 1 Text of Proposed Order)(Crowley, Daniel) (Entered: 06/13/2017) |
| 06/14/2017 | | | MINUTE ORDER: Upon consideration of 11 the plaintiff's consent motion for an extension of time to file a response/reply, and the entire record herein, it is hereby ORDERED that the motion is GRANTED; it is further ORDERED that plaintiff shall file her response by not later than June 23, 2017. Signed by Judge John D. Bates on 06/14/17. (lcjdb1) (Entered: 06/14/2017) |
| 06/14/2017 | | | Set/Reset Deadlines: Responses due by 6/23/2017. (tb) (Entered: 06/14/2017) |
| 06/23/2017 | 12 | | AMENDED COMPLAINT against UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT filed by LIZA IGLESIAS.(Crowley, Daniel) (Entered: 06/23/2017) |
| 06/27/2017 | | | MINUTE ORDER: Upon consideration of plaintiff's filing of 12 the amended complaint, it hereby ORDERED that 8 defendant's motion to dismiss the original complaint is DENIED as moot; and it is further ORDERED that defendant shall answer or otherwise respond to the amended complaint by not later than July 27, 2017. SO ORDERED. Signed by Judge John D. Bates on 06/27/17. (lcjdb1) (Entered: 06/27/2017) |
| 06/27/2017 | | | Set/Reset Deadlines: Answer due by 7/27/2017, (tj) (Entered: 06/27/2017) |
| 07/27/2017 | 13 | | Consent MOTION for Extension of Time to File Answer re 12 Amended Complaint by UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT (Haynes, Fred) (Entered: 07/27/2017) |
| 07/28/2017 | | | MINUTE ORDER: Upon consideration of 13 defendant's consent motion for an extension of time, it is hereby ORDERED that the motion is GRANTED; it is |

| | | | |
|---|---|---|---|
| | | | further ORDERED that defendant shall answer or otherwise respond to the amended complaint by not later than Friday, July 28, 2017. Signed by Judge John D. Bates on 07/28/17. (lcjdb1) (Entered: 07/28/2017) |
| 07/31/2017 | 14 | | Consent MOTION for Extension of Time to File Answer re 12 Amended Complaint by UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT (Haynes, Fred) (Entered: 07/31/2017) |
| 07/31/2017 | 15 | | ANSWER to 12 Amended Complaint by UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT. Related document: 12 Amended Complaint filed by LIZA IGLESIAS.(Haynes, Fred) (Entered: 07/31/2017) |
| 07/31/2017 | | | MINUTE ORDER: Upon consideration of 14 the defendant's consent motion for an extension of time, it is hereby ORDERED that the motion is GRANTED; it is further ORDERED that the defendant shall file its Answer by not later than July 31, 2017. Signed by Judge John D. Bates on 07/31/17. (lcjdb1) (Entered: 07/31/2017) |
| 08/01/2017 | | | Set/Reset Deadlines: Answer due by 7/31/2017. (tb) (Entered: 08/01/2017) |
| 08/07/2017 | 16 | | ORDER. See text of Order for details. Signed by Judge John D. Bates on 08/07/17. (lcjdb1) (Entered: 08/07/2017) |
| 08/07/2017 | | | Set/Reset Deadlines: Proposed briefing schedule for the filing of dispositive motions due by 9/5/2017. (tb) (Entered: 08/07/2017) |
| 09/05/2017 | 17 | | Joint MOTION for Briefing Schedule by LIZA IGLESIAS (Attachments: # 1 Text of Proposed Order)(Hannon, J.) (Entered: 09/05/2017) |
| 09/05/2017 | | | MINUTE ORDER: Upon consideration of 17 the parties' joint motion for a briefing schedule, it is hereby ORDERED that the motion is GRANTED; it is further ORDERED that the parties shall comply with the following briefing schedule: Plaintiff's motion for summary judgment shall be filed by November 3, 2017; Respondent's opposition and cross–motion for summary judgment, if any, shall be filed by December 1, 2017; Plaintiff's reply in support of her motion and opposition to respondent's cross–motion, if any, shall be filed by December 29, 2017; respondent's reply in support of its cross–motion, if any, shall be filed by January 26, 2018. SO ORDERED. Signed by Judge John D. Bates on 09/05/17. (lcjdb1) (Entered: 09/05/2017) |
| 09/10/2017 | | | Set/Reset Deadlines: Cross Motion due by 12/1/2017. Response to Cross Motion due by 12/29/2017. Reply to Cross Motion due by 1/26/2018. Summary Judgment motion due by 11/3/2017. Response to Motion for Summary Judgment due by 12/1/2017. Reply to Motion for Summary Judgment due by 12/29/2017. (tb) (Entered: 09/10/2017) |
| 11/01/2017 | 18 | | Consent MOTION for Extension of Time to *Extend Briefing Schedule* by LIZA IGLESIAS (Attachments: # 1 Text of Proposed Order)(Hannon, J.) (Entered: 11/01/2017) |
| 11/02/2017 | | | MINUTE ORDER: Upon consideration of 18 petitioner's unopposed motion for an extension of the briefing schedule, and the entire record herein, it is hereby ORDERED that the motion is GRANTED; and it is further ORDERED that the parties shall comply with the following briefing schedule: petitioner's motion for summary judgment shall be filed by not later than November 15, 2017; respondent's opposition and cross–motion for summary judgment, if any, |

4

| | | | |
|---|---|---|---|
| | | | shall be filed by not later than December 13, 2017; petitioner's reply in support of her motion and opposition to respondent's cross–motion, if any, shall be filed by not later than January 10, 2018; and respondent's reply in support of its cross–motion, if any, shall be filed by not later than February 7, 2018. SO ORDERED. Signed by Judge John D. Bates on 11/2/2017. (lcjdb1) (Entered: 11/02/2017) |
| 11/03/2017 | | | Set/Reset Deadlines: Cross Motion due by 12/13/2017. Response to Cross Motion due by 1/10/2018. Reply to Cross Motion due by 2/7/2018. Summary Judgment motion due by 11/15/2017. Response to Motion for Summary Judgment due by 12/13/2017. Reply to Motion for Summary Judgment due by 1/10/2018. (tb) (Entered: 11/03/2017) |
| 11/15/2017 | 19 | | MOTION for Summary Judgment by LIZA IGLESIAS (Attachments: # 1 Text of Proposed Order)(Crowley, Daniel) (Entered: 11/15/2017) |
| 12/13/2017 | 20 | | Consent MOTION for Extension of Time to File *Defendant's Opposition to Plaintiff's Motion for Summary Judgment and Defendant's Cross–Motion for Summary Judgment* by UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT (Haynes, Fred) (Entered: 12/13/2017) |
| 12/14/2017 | | | MINUTE ORDER: Upon consideration of 20 defendant's unopposed motion for an extension of time to file its cross–motion for summary judgment, and the entire record herein, it is hereby ORDERED that the motion is GRANTED; and it is further ORDERED that defendant shall file its cross–motion by not later than Wednesday, December 20, 2017. SO ORDERED. Signed by Judge John D. Bates on 12/14/2017. (lcjdb1) (Entered: 12/14/2017) |
| 12/14/2017 | | | Set/Reset Deadlines: Summary Judgment motion due by 12/20/2017. (tb) (Entered: 12/14/2017) |
| 12/20/2017 | 21 | | Consent MOTION for Extension of Time to File *Defendant's Opposition to Plaintiff's Motion for Summary Judgment and Defendant's Cross–Motion for Summary Judgment* by UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT (Haynes, Fred) (Entered: 12/20/2017) |
| 12/20/2017 | | | MINUTE ORDER: Upon consideration of 21 defendant's unopposed motion for an extension of time to file its cross–motion for summary judgment, and the entire record herein, it is hereby ORDERED that the motion is GRANTED; and it is further ORDERED that defendant's cross–motion shall be filed by not later than Friday, December 29, 2017. SO ORDERED. Signed by Judge John D. Bates on 12/20/2017. (lcjdb1) (Entered: 12/20/2017) |
| 12/21/2017 | | | Set/Reset Deadlines: Cross Motion due by 12/29/2017. (tb) (Entered: 12/21/2017) |
| 12/29/2017 | 22 | | Consent MOTION for Extension of Time to File *Defendant's Opposition to Plaintiff's Motion for Summary Judgment and Defendant's Cross–Motion for Summary Judgment* by UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT (Haynes, Fred) (Entered: 12/29/2017) |
| 01/02/2018 | | | MINUTE ORDER: Upon consideration of 22 defendant's consent motion for an extension of time to file its opposition to plaintiff's motion for summary judgment, and the entire record herein, it is hereby ORDERED that the motion is GRANTED nunc pro tunc; and it is further ORDERED that the defendant |

| | | | |
|---|---|---|---|
| | | | shall file its opposition by not later than today, January 2, 2018. Signed by Judge John D. Bates on 1/2/2018. (lcjdb1) (Entered: 01/02/2018) |
| 01/02/2018 | 23 | | Cross MOTION for Summary Judgment by UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT (Attachments: # 1 Exhibit A – Foreign Service Grievance Board's Final Decision)(Haynes, Fred) (Entered: 01/02/2018) |
| 01/02/2018 | 24 | | Memorandum in opposition to re 19 MOTION for Summary Judgment filed by UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT. (Haynes, Fred) (Entered: 01/02/2018) |
| 01/03/2018 | | | Set/Reset Deadlines: Response to Motion for Summary Judgment due by 1/2/2018. (tb) (Entered: 01/03/2018) |
| 01/11/2018 | 25 | | Consent MOTION for Extension of Time to *Respond to Defendant's Cross−Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment* by LIZA IGLESIAS (Attachments: # 1 Exhibit Proposed Order)(Crowley, Daniel) (Entered: 01/11/2018) |
| 01/12/2018 | | | MINUTE ORDER: Upon consideration of 25 plaintiffs' motion for an extension of time to file her reply in support of her motion for summary judgment, and the entire record herein, it is hereby ORDERED that the motion is GRANTED; it is further ORDERED that plaintiff shall file her reply by not later than Tuesday, February 13, 2018; and it is further ORDERED that defendant shall file its reply in support of its cross−motion for summary judgment by not later than Tuesday, March 13, 2018. Signed by Judge John D. Bates on 1/12/2018. (lcjdb1) (Entered: 01/12/2018) |
| 01/17/2018 | | | Set/Reset Deadlines: Reply to Cross Motion due by 3/13/2018. Reply to Motion for Summary Judgment due by 2/13/2018. (tb) (Entered: 01/17/2018) |
| 02/09/2018 | 26 | | Consent MOTION for Extension of Time to File Response/Reply as to 23 Cross MOTION for Summary Judgment by LIZA IGLESIAS (Attachments: # 1 Text of Proposed Order Proposed Order)(Crowley, Daniel) (Entered: 02/09/2018) |
| 02/13/2018 | | | MINUTE ORDER: Upon consideration of 26 plaintiff's consent motion for an extension of time to file her reply in support of her motion for summary judgment, and the entire record herein, it is hereby ORDERED that the motion is GRANTED; it is further ORDERED that plaintiff shall file her reply by not later than Friday, February 23, 2018; and it is further ORDERED that defendant shall file its reply in support of its cross−motion for summary judgment by not later than Monday, March 26, 2018. Signed by Judge John D. Bates on 2/13/2018. (lcjdb1) (Entered: 02/13/2018) |
| 02/14/2018 | | | Set/Reset Deadlines: Reply to Cross Motion due by 3/26/2018. Reply to Motion for Summary Judgment due by 2/23/2018. (tb) (Entered: 02/14/2018) |
| 02/23/2018 | 27 | | Memorandum in opposition to re 23 Cross MOTION for Summary Judgment , 19 MOTION for Summary Judgment filed by LIZA IGLESIAS. (Attachments: # 1 Text of Proposed Order)(Crowley, Daniel) (Entered: 02/23/2018) |
| 02/23/2018 | 28 | | REPLY to opposition to motion re 19 MOTION for Summary Judgment filed by LIZA IGLESIAS. (See Docket Entry 27 to view document). (znmw) (Entered: 02/26/2018) |

| 03/05/2018 | 29 | | MOTION for Hearing *for Oral Argument* by LIZA IGLESIAS (Attachments: # 1 Text of Proposed Order Proposed Order)(Crowley, Daniel) (Entered: 03/05/2018) |
|---|---|---|---|
| 03/26/2018 | 30 | | Consent MOTION for Extension of Time to File *Defendant's Reply Memorandum in Support of Its Cross−Motion for Summary Judgment* by UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT (Haynes, Fred) (Entered: 03/26/2018) |
| 03/27/2018 | | | MINUTE ORDER: Upon consideration of 30 defendant's consent motion for an extension of time to file its reply in support of its cross−motion for summary judgment, and the entire record herein, it is hereby ORDERED that the motion is GRANTED; and it is further ORDERED that the defendant's reply shall be filed by not later than Monday, April 2, 2018. SO ORDERED. Signed by Judge John D. Bates on 3/27/2018. (lcjdb1) (Entered: 03/27/2018) |
| 03/27/2018 | | | Set/Reset Deadlines: Defendant's Reply to 23 due by 4/2/2018. (dot) (Entered: 03/27/2018) |
| 04/02/2018 | 31 | | REPLY to opposition to motion re 23 Cross MOTION for Summary Judgment filed by UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT. (Haynes, Fred) (Entered: 04/02/2018) |
| 04/16/2018 | 32 | | Consent MOTION for Extension of Time to File *the Admninistrative Record* by UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT (Haynes, Fred) (Entered: 04/16/2018) |
| 04/17/2018 | | | MINUTE ORDER: Upon consideration of 32 defendant's consent motion for an extension of time to file the administrative record, and the entire record herein, it is hereby ORDERED that the motion is GRANTED; and it is further ORDERED that the administrative record shall be filed by not later than Wednesday, April 18, 2018. SO ORDERED. Signed by Judge John D. Bates on 4/17/2018. (lcjdb1) (Entered: 04/17/2018) |
| 04/17/2018 | | | Set/Reset Deadlines: Administrative Record due by 4/18/2018. (tb) (Entered: 04/17/2018) |
| 04/18/2018 | 33 | | JOINT APPENDIX by LIZA IGLESIAS. (Attachments: # 1 Appendix Administrative Record, # 2 Appendix Administrative Record, # 3 Appendix Administrative Record, # 4 Appendix Administrative Record, # 5 Appendix Administrative Record, # 6 Appendix Administrative Record, # 7 Appendix Administrative Record, # 8 Appendix Administrative Record, # 9 Appendix Administrative Record, # 10 Appendix Administrative Record, # 11 Appendix Administrative Record, # 12 Appendix Administrative Record, # 13 Appendix Administrative Record, # 14 Appendix Administrative Record, # 15 Appendix Administrative Record, # 16 Appendix Administrative Record, # 17 Appendix Administrative Record, # 18 Administrative Record)(Hart, Karey) (Entered: 04/18/2018) |
| 10/12/2018 | 34 | 11 | ORDER denying 19 petitioner's motion for summary judgment and granting 23 respondent's motion for summary judgment. See text of Order and accompanying Memorandum Opinion for details. Signed by Judge John D. Bates on 10/12/2018. (lcjdb2) (Entered: 10/12/2018) |
| 10/12/2018 | 35 | 12 | |

| | | | |
|---|---|---|---|
| | | | MEMORANDUM OPINION. Signed by Judge John D. Bates on 10/12/2018. (lcjdb2) (Entered: 10/12/2018) |
| 10/12/2018 | 36 | | MINUTE ORDER: Upon consideration of <u>29</u> petitioner's motion for oral argument on the parties' cross−motions for summary judgment, and the entire record herein, it is hereby ORDERED that the the motion is DENIED AS MOOT. Signed by Judge John D. Bates on 10/12/2018. (lcjdb2) (Entered: 10/12/2018) |
| 12/10/2018 | <u>37</u> | 9 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to <u>34</u> Order on Motion for Summary Judgment, <u>35</u> Memorandum & Opinion by LIKZA IGLESIAS. Filing fee $ 505, receipt number 0090−5831036. Fee Status: Fee Paid. Parties have been notified. (Hannon, J.) (Entered: 12/10/2018) |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LIKZA IGLESIAS, | : |
| | : |
| Petitioner, | : |
| | : |
| v. | :     Docket No.: 17-00285 (JDB) |
| | : |
| UNITED STATES AGENCY FOR | : |
| INTERNATIONAL DEVELOPMENT, | : |
| | : |
| Respondent. | : |

## NOTICE OF APPEAL

Notice is hereby given that Likza Iglesias, petitioner in the above named case, hereby

appeals to the United States Court of Appeals for the District of Columbia Circuit from the final

judgment entered in this action on October 12, 2018 (ECF Nos. 34, 35).

Dated: December 10, 2018           Respectfully submitted,

HANNON LAW GROUP, LLP

*/s/ J. Michael Hannon*
J. Michael Hannon, Bar No. 352526
333 8th Street, N.E.
Washington, D.C. 20002
(202) 232-1907
(202) 232-3704 Facsimile
jhannon@hannonlawgroup.com

*Attorneys for Petitioner Likza Iglesias*

## CERTIFICATE OF SERVICE

   I hereby certify the foregoing was electronically served on December 10, 2018 via the Court's electronic filing system to:

Fred E. Haynes, D.C. Bar #165654
Assistant United States Attorney
555 Fourth Street, N.W., Room E-4110
Washington, D.C. 20530
(202) 252-2550
fred.haynes@usdoj.gov

            */s/J. Michael Hannon*
            J. Michael Hannon

| | |
|---|---|
| **LIKZA IGLESIAS,** | |
| **Petitioner,** | |
| v. | **Civil Action No. 17-285 (JDB)** |
| **UNITED STATES AGENCY FOR** | |
| **INTERNATIONAL DEVELOPMENT,** | |
| **Defendant.** | |

## ORDER

Upon consideration of [19] petitioner's motion for summary judgment, and [23] respondent's cross-motion for summary judgment, and for the reasons stated in the Memorandum Opinion issued on this date, it is hereby

**ORDERED** that petitioner's motion for summary judgment is **DENIED**; and it is further

**ORDERED** that respondent's motion for summary judgment is **GRANTED**.

**SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated: October 12, 2018

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LIKZA IGLESIAS,** | |
| **Petitioner,** | |
| **v.** | **Civil Action No. 17-285 (JDB)** |
| **UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT,** | |
| **Respondent.** | |

## MEMORANDUM OPINION

In 2012, the United States Agency for International Development, Office of Inspector General ("USAID-OIG"), recommended firing one of its auditors, Likza Iglesias, after an investigation prompted by an anonymous complaint determined she intentionally had submitted false claims for reimbursement. Iglesias contested USAID-OIG's decision, claiming that any inaccuracies in her submissions were unintentional and that the anonymous complaint, the investigation, and her proposed removal from the Foreign Service were retaliation for two audit findings she had made, both of which she claimed were protected disclosures under the Whistleblower Protection Act. The Foreign Service Grievance Board ("FSGB" or "Board") upheld USAID-OIG's recommendation, concluding that Iglesias intentionally had submitted false claims and that there was no evidence of any connection between the audit disclosures and the subsequent investigation or her proposed removal. Iglesias petitioned this Court for review, filing a motion for summary judgment challenging the Board's decision. USAID-OIG[1] filed a cross-

---

[1] Iglesias's petition for review named respondent only as "United States Agency for International Development"; the FSGB, the parties' motions, and other pleadings refer to respondent as either "USAID-OIG" or "OIG." Consistent with the FSGB, the Court will refer to respondent herein as "USAID-OIG."

motion for summary judgment in response urging that the Board be affirmed. For the reasons explained herein, the Court will deny [19] Iglesias's motion for summary judgment and will grant [23] USAID-OIG's cross-motion.

## BACKGROUND

### I. FACTS

Likza Iglesias began working as an auditor at USAID-OIG in 2006. Administrative Record ("A.R.") at 6071.[2] As an OIG auditor, Iglesias's responsibilities included preparing audit reports, reviewing USAID programs, documenting waste, and recommending corrective actions. See A.R. at 9, 2660. From 2009 through 2011, Iglesias was assigned to one of USAID-OIG's regional offices in Pretoria, South Africa. A.R. at 6071.

In June 2011, Special Agent ("SA") Conor Cherer, an OIG investigator in the Pretoria office, opened an investigation into Iglesias after conducting an interview with an anonymous complainant who alleged that Iglesias had been seeking reimbursements to which she was not entitled. See A.R. at 3098–3102, 6072. In August 2011, before Cherer completed the investigation, Lisa McClennon—then the Special Agent in Charge ("SAC") of investigations for the region—arrived in Pretoria for a "site visit." A.R. at 5547–48. During the visit, McClennon decided to take over the Iglesias investigation, finding that Cherer had made insufficient progress. A.R. at 6072. The Iglesias investigation, McClennon testified, "deserved a higher priority" than other cases "because it involved an OIG employee" and therefore implicated "the credibility of the Office of Inspector General." A.R. at 5549.

To complete the investigation, McClennon conducted a series of interviews and requested a review of Iglesias's reimbursement requests and other requests for financial allowances. A.R. at

---

[2] The Administrative Record is filed in separate attachments to the Joint Appendix [ECF No. 33]. The Court cites to the consecutive page numbers therein.

2813, 6072.  Over the next few weeks, McClennon discovered a series of inaccuracies that consistently accrued to Iglesias's benefit, including, for instance, the submission of transportation vouchers and cost of living adjustment ("COLA") forms requesting benefits to which Iglesias was not entitled.  A.R. at 6072–73.  McClennon briefed the then-Acting Inspector General ("AIG") of USAID-OIG, Michael Carroll, and the then-Regional Inspector General ("RIG") Christine Byrne, on her findings.  A.R. at 5578, 6072–73.  Almost immediately thereafter, Carroll ordered that Iglesias's assignment in Pretoria be cut short and that she be reassigned to Washington, D.C., pending further action.  A.R. at 2653, 6073.

In December 2011, AIG Carroll formally proposed that Iglesias be removed from the Foreign Service for violating personnel regulations prohibiting "intentional . . . misrepresentation[s] concerning a material fact on any official form, such as . . . reimbursement of expenses, eligibility for allowances, etc." and "[c]onduct demonstrating untrustworthiness."  A.R. at 4.  The charged conduct consisted of the intentional submission of false claims for transportation expenses, failure to report changes in household size to obtain larger living quarters, and the submission of inaccurate COLA forms resulting in overpayments.  A.R. at 4–8.  Shortly thereafter, Iglesias was placed on administrative leave with pay pending the conclusion of the administrative action against her.  A.R. at 12.

In February 2012, Iglesias responded to the proposed removal through counsel.  See A.R. at 15–23.  The response conceded certain inaccuracies in Iglesias's reimbursement forms but maintained that "there was never any intention to obtain more funds than she was entitled to."  A.R. at 18.  Iglesias's response also claimed that her proposed removal resulted from "an overzealous investigation" motivated by "personal biases" and "ill feelings toward her," A.R. at

3

21, including because her supervisor, RIG Byrne, felt Iglesias spoke English with an accent that hindered her work, see A.R. at 22, 6074.

Three months later, Iglesias supplemented her initial response to AIG Carroll's proposal for removal with a new allegation: her proposed termination was not due to personal biases, but in retaliation for two protected "disclosures" under the Whistleblower Protection Act ("WPA"). See A.R. at 6700–02.[3] Specifically, Iglesias alleged that her termination violated section 2302(b)(8) of the WPA, which prohibits adverse personnel action "because of . . . any disclosure of information by an employee . . . which the employee . . . reasonably believes evidences (i) any violation of any law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." 5 U.S.C. § 2302(b)(8).

The first protected disclosure, Iglesias explained, occurred as part of her team's 2010 audit of USAID's HIV/AIDS treatment activities in South Africa, which formed part of the President's Emergency Program for AIDS Relief ("PEPFAR"). See A.R. at 5170, 6700–01. Iglesias alleged that after her audit team discovered and attempted to include in their audit report "clear" evidence that $60 million of funding was disbursed to the South African government despite that government's failure to satisfy certain required preconditions, RIG Byrne informed Iglesias that the "funding was outside the scope of the audit and prohibited her from conducting any further

---

[3] Congress enacted certain personnel protections in the Civil Service Reform Act of 1978 ("CSRA"), Pub. L. No. 95–454, 92 Stat. 1111 (1978) (codified in scattered sections of 5 U.S.C.), and the Whistleblower Protection Act of 1989, Pub. L. No. 101–12, 103 Stat. 16 (1989) (codified in scattered sections of 5 U.S.C.); see 5 U.S.C. § 2302 (defining "[p]rohibited personnel practices"). The Foreign Service Act of 1980 ("FSA"), Pub. L. No. 96–465, 94 Stat. 2071 (1980), in turn incorporates the relevant protections outlined in 5 U.S.C. § 2302(b). See 22 U.S.C. § 3905(b)(2), (4).

In addition to challenging her dismissal before the Foreign Service Grievance Board ("FSGB"), Iglesias simultaneously filed a whistleblower retaliation claim with the Office of Special Counsel ("OSC"), which reports to the Merit Systems Protection Board ("MPSB"). See A.R. at 52–54; see also 5 U.S.C. § 1201 et seq. (establishing MPSB). OSC dismissed Iglesias's claim, see A.R. at 5998, and that claim is not at issue before this Court.

4

investigation." A.R. at 6701. The second protected disclosure, Iglesias said, concerned her involvement with an audit of a USAID family planning and reproductive health program in Madagascar. A.R. at 6701. Iglesias claimed that after her team disclosed in their "draft audit report" that a shipment of USAID-purchased contraceptive drugs could no longer be used because the government of Madagascar changed certain drug laws, RIG Byrne "responded by stating that it was not necessary to report the issue" because USAID-OIG had "brought the issue to USAID['s]" attention, and further orders were canceled. A.R. at 6701. Because "[RIG] Byrne and others" perceived her "as a 'trouble maker'" for attempting to make these two negative audit findings, Iglesias alleged, she "became the subject of retaliatory conduct"—namely, the investigation into her reimbursement forms ultimately leading to the proposed removal. A.R. at 6702.

In response, AIG Carroll issued a decision rejecting Iglesias's arguments and recommending that Iglesias be removed for cause. See A.R. at 101–107. AIG Carroll first explained why he did not find the "contention that [Iglesias's] actions were unintentional" credible. A.R. at 107. Then, in reply to Iglesias's supplemental response raising a whistleblower defense, Carroll stated only that the "investigation was initiated based on an anonymous complaint," A.R. at 106, and that Iglesias submitted "no evidence" that could exonerate her, A.R. at 103. Iglesias was placed on leave without pay pending a hearing before the FSGB. A.R. at 107.[4]

---

[4] When Carroll issued the decision recommending Iglesias's removal to the Board, he was technically the Deputy Inspector General ("DIG") because his "Acting" status had expired without being nominated as the next Inspector General of USAID. A.R. at 6074–75. Accordingly, on March 27, 2013, the FSGB first dismissed the removal recommendation without prejudice on the grounds that DIG Carroll did not have the authority to recommend removal for cause. See A.R. at 6075. President Obama nominated Carroll to become the next Inspector General in June 2013, however, and the case was then reinstated and proceedings resumed. See A.R. at 6075.

## II. PROCEEDINGS BEFORE THE FOREIGN SERVICE GRIEVANCE BOARD

Before issuing a decision, the Board set a discovery schedule culminating with a hearing to take place in July 2014. A.R. at 6075. A week before the hearing, the Board denied Iglesias's motion for leave to depose certain USAID-OIG witnesses concerning their knowledge of any protected disclosures, ruling that the whistleblower defense must be predicated on AIG Carroll's direct knowledge of the protected disclosures. See A.R. at 6076. Iglesias then "withdr[e]w her claim of [whistleblower] retaliation," conceding that there was no evidence Carroll had such knowledge. A.R. at 2032. The hearing took place as planned without any whistleblower evidence. While the Board was preparing its final order, Carroll—who was still awaiting confirmation as Inspector General—withdrew his name from consideration and retired. A.R. at 6075. Iglesias then filed a motion to reopen discovery concerning the whistleblower defense, citing a newspaper article detailing allegations from other OIG auditors (not including Iglesias) that Carroll improperly pressured auditors to downplay negative findings and that such allegations had caused Carroll's withdrawal. See A.R. at 4446–66, 5390–91.

Although the Board refused to rely on AIG Carroll's withdrawal or the article as a basis for reopening discovery, the Board nevertheless reconsidered its original position that a whistleblower defense must be predicated on Carroll's "direct knowledge" of any protected disclosures, concluding instead that the defense may also be proven if someone with knowledge of Iglesias's audit disclosures improperly influenced Carroll's decision through involvement with the investigation into her reimbursement claims. See A.R. at 4460–64. On that basis, the Board offered Iglesias the opportunity to reinstate the withdrawn whistleblower defense and reopen discovery to depose SA Cherer and Robert Mason, an audit manager and one of Iglesias's supervisors. See A.R. at 4464–66.

6

During their depositions, SA Cherer and Mason refused to answer questions about the source of the complaint prompting the initial investigation of Iglesias. <u>See</u> A.R. at 6077–78. In response, Iglesias filed a motion to compel them to answer, arguing that whether the anonymous complainant had any connection to Iglesias's protected disclosure was critical to proving her whistleblower defense. <u>See</u> A.R. at 4607–25. The Board granted Iglesias's motion in part, ordering USAID-OIG to disclose any knowledge the source might have had about Iglesias's protected disclosures but declining to require it to reveal the source's actual identity. <u>See</u> A.R. at 5397–5400. To achieve that outcome, the Board ordered USAID-OIG to "disclose to the Board, <u>in camera</u>," whether the identity of the source was "known to the agency," whether "the source ha[d] knowledge of Ms. Iglesias' effort to make negative audit findings in the South Africa . . . and/or the Madagascar [audits]," and whether the source "w[ould] consent to disclosure of his/her identity." A.R. at 5400. In a submission later provided to Iglesias, USAID-OIG responded that the source was known, USAID-OIG had communicated with the source on two occasions, the source had no "knowledge of Ms. Iglesias'[s] alleged efforts to make negative audit findings," and the source did "not consent to disclosure of his/her identity." A.R. at 5412; <u>see</u> A.R. at 5432.

The Board then held a second evidentiary hearing solely on the whistleblower defense, considered additional post-hearing briefs and responses, and closed the proceedings in September 2016, pending its written decision. <u>See</u> A.R. at 6078.

### III.  THE FOREIGN SERVICE GRIEVANCE BOARD DECISION

On January 6, 2017, the FSGB issued a decision upholding Iglesias's removal from the Foreign Service. The Board first concluded that USAID-OIG met its burden to prove that Iglesias "knowingly submitted false vouchers . . . with the intent to deceive her employer and to receive reimbursement funds to which she was not entitled," A.R. at 6092–93, and that Iglesias

7

"knowingly failed to update . . . COLA forms" in a manner that "always [accrued] to her financial benefit," A.R. at 6100.[5]  Iglesias does not seek review of those rulings.

The Board then addressed Iglesias's affirmative whistleblower defense.  See A.R. at 6102–6111.  To establish a prima facie whistleblower retaliation claim, the Board explained, Iglesias "bears the burden of establishing by preponderant evidence that: (1) she made a protected disclosure under the WPA; (2) she was subsequently the subject of an adverse 'personnel action' and (3) the protected disclosure was a 'contributing factor' in the decision to take that action." A.R. at 6090 (citing Whitmore v. Dep't of Labor, 680 F.3d 1353, 1367 (Fed. Cir. 2012)).[6]

The Board considered each requirement in turn, starting with whether Iglesias's alleged negative audit findings qualify as protected "disclosures" under the WPA.  As relevant here, the WPA defines a "disclosure" as any "formal or informal" communication that the "employee . . . reasonably believes . . . evidences[] . . . gross mismanagement[ or] a gross waste of funds."  5 U.S.C. § 2302(a)(2)(D); see also 5 U.S.C. § 2302(b)(8).  The Board concluded that Iglesias made protected "disclosures" under this definition because "the evidence established that [Iglesias] made informal complaints about certain aspects of the audited programs that she believed evidenced gross mismanagement and a gross waste of funds."  A.R. at 6102.  The Board also concluded that Iglesias was subject to an adverse "personnel action" because she was "proposed for [removal] from the [Foreign] Service by the AIG, Michael Carroll"—a decision which "arose directly from the investigation" of her reimbursement forms.  A.R. at 6105.

---

[5] The Board also found that USAID-OIG failed to prove Iglesias improperly reported changes in household size.  See A.R. at 6101.  USAID-OIG does not challenge that finding.

[6] Because whistleblower claims are frequently adjudicated by the MSPB and, until 2012, were appealed only to the Federal Circuit, see Acha v. Dep't of Agric., 841 F.3d 878, 880 n.2 (10th Cir. 2016), Federal Circuit and MSPB opinions are frequently cited as authority on personnel practices claims.

Having found protected disclosures and an adverse personnel action, the Board proceeded to "examine the nexus, if any," between Iglesias's protected disclosures and her removal. A.R. at 6105. Specifically, the Board considered "direct and circumstantial" evidence of whether the officials involved in Iglesias's investigation or removal "had actual or constructive" awareness of Iglesias's protected disclosures, as well as whether such disclosures contributed in any way either to the investigation of Iglesias or her ultimate removal. A.R. at 6105. The Board answered no on both counts.

As an initial matter, the Board found no evidence that AIG Carroll or his staff had any knowledge of Iglesias's protected disclosures or that the disclosures directly influenced the decision to propose her removal. See A.R. at 6107. Recognizing that the decision to initiate the investigation or its scope—as opposed to just the final decision—could have been "tainted" by someone with knowledge of her protected disclosures, the Board also examined anyone else that may have had influence over the investigation. See A.R. at 6107–10.

The Board found no evidence that SA Cherer, SAC McClennon, or anyone else involved in the investigation had any knowledge of Iglesias's claimed disclosures. A.R. at 6108–09. And while the Board acknowledged that Iglesias's supervisor RIG Byrne did have knowledge of the disclosures, the Board dismissed the possibility that Byrne told someone connected to the investigation about them as "rank speculation." A.R. at 6108.

The Board also concluded that there was no evidence tying the initiation of the investigation to the disclosures. See A.R. at 6107–08. Specifically, the Board rejected Iglesias's suggestion that it should presume the source knew of Iglesias's protected disclosure based on "a negative inference from the agency's failure to disclose [his or her] identity." A.R. at 6107 n.36. The Board found "that the OIG had a sound legal and policy basis for declining to disclose the

9

identity of [the anonymous source]," including that the source had, in response to the Board's inquiry, "declined to have his/her identity revealed" as part of the proceedings. A.R. at 6107 n.36.

As part of this analysis, the Board acknowledged that some of McClennon's actions—e.g., insisting on taking over Cherer's investigation, the request to review "every single voucher or form" Iglesias submitted, completing a dozen interviews, etc.—and some of RIG Byrne's actions—including an email sent to AIG Carroll suggesting that the U.S. Ambassador to South Africa was pleased with McClennon's investigation and the decision to remove Iglesias—were "unusual enough to suggest some negative animus against Mrs. Iglesias." A.R. at 6108–09. But the Board concluded that it was Iglesias's burden to establish a connection between the investigation and the protected disclosures, see A.R. at 6108 n.37, and even if McClennon "may have been on a 'fishing expedition' aimed at finding something with which to incriminate" Iglesias, there was "no evidence" that the "expedition" had any connection to the protected disclosures. A.R. at 6108–09. Indeed, "[n]otwithstanding [a] mosaic of possibly negative feelings toward Mrs. Iglesias," the Board found "no evidence at all of a nexus between the mosaic and her having raised concerns about either of the two audits." A.R. at 6110 n.38. To the contrary, the Board cited evidence that Iglesias's behavior aroused suspicion because "every [financial] allowance she sought [from USAID-OIG] was considered unusual, requiring either an exception or additional research." A.R. at 6108 n.37. Iglesias thus "failed to prove" by a preponderance of the evidence "that her protected audit disclosures contributed in any way to the investigation into her financial submissions" or her removal. A.R. at 6111. Because Iglesias failed to make out a prima facie case sustaining her affirmative whistleblower defense, the Board upheld the misconduct charges against her. A.R. at 6111.

Finally, the Board reviewed USAID-OIG's proposed penalty—Iglesias's removal from the Foreign Service—for reasonableness.  See A.R. at 6111–14.  To establish reasonableness, the Board explained, USAID-OIG "must consider [certain] relevant factors" including "the seriousness of the offense[,]" whether the offenses were "intentional and not inadvertent," as well as "the consistency of the penalty with what has been imposed" in similar cases.  A.R. at 6111–12.  The Board was "satisfied" that AIG Carroll sufficiently "review[ed] and consider[ed]" the relevant factors, noting his explanation that Iglesias made "intentional, repeated," misrepresentations that "resulted in financial gain to her" while simultaneously occupying a "senior fiduciary and supervisory" position responsible for "ferret[ing] out false representations." A.R. at 6112–13.  Finally, the Board observed that few mitigating circumstances applied, noting instead that Iglesias "expressed no remorse," "excused her conduct as being the fault of others," and remained "without regret that her various submissions were consistently erroneous, resulting in . . . repeated financial gain to herself" but rarely, if ever, "result[ing] in accidental gain in the [A]gency's favor."  A.R. at 6113–14.

Iglesias timely petitioned this Court for review, see Pet. for Review of Admin. Order [ECF No. 1], and filed a motion for summary judgment challenging the Board's decision, see Pet'r's Mot. for Summ. J. ("Pet'r's Mot.") [ECF No. 19].  USAID-OIG filed a cross-motion for summary judgment asking the Court to affirm the Board.  See Resp't's Cross-Mot. for Summ. J. ("Resp't's Cross-Mot.") [ECF No. 23].  Briefing is complete and the motions are ripe for resolution.

## STANDARD OF REVIEW

The Court reviews FSGB decisions under section 706(2) of the Administrative Procedure Act ("APA"), which provides that "agency action, findings, and conclusions" must be held "unlawful and set aside" if they are "arbitrary, capricious, an abuse of discretion, or otherwise not

11

in accordance with law." 5 U.S.C. § 706(2)(A); see 22 U.S.C. § 4140. District courts shall additionally set aside any final FSGB action that is "contrary to a constitutional right," § 706(2)(B), "without observance of procedure required by law," § 706(2)(C), or "unsupported by substantial evidence." § 706(2)(E).

When reviewing an FSGB decision "the district judge sits as an appellate tribunal," Am. Bioscience, Inc. v. Thompson, 269 F.3d 1077, 1083 (D.C. Cir. 2001), and the parties' cross-motions for summary judgment under Federal Rule of Civil Procedure 56(a) serve merely "as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review," Lubow v. U.S. Dep't of State, 923 F. Supp. 2d 28, 34 (D.D.C. 2013).

The scope of review is "highly deferential" and the Court is not permitted "to substitute its judgment for that of the agency." Aragon v. Tillerson, 240 F. Supp. 3d 99, 108 (D.D.C. 2017). This deferential standard of review reflects "a legislative judgment that the [Foreign Service Grievance] Board's familiarity with the foreign service ought to be respected by the judiciary." United States v. Paddack, 825 F.2d 504, 514 (D.C. Cir. 1987). However, the Court must be satisfied that the Board has "articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Alpharma, Inc. v. Leavitt, 460 F.3d 1, 6 (D.C. Cir. 2006) (citation omitted). Such review is confined to the administrative record. See CTS Corp. v. EPA, 759 F.3d 52, 65 (D.C. Cir. 2014).

## ANALYSIS

Iglesias's motion for summary judgment asserts that the Board committed three legal errors in connection with rejecting her affirmative whistleblower retaliation defense: (1) denying Iglesias's motion to compel identification of the source of the complaint against her (and refusal

12

to draw an adverse inference from USAID-OIG's decision to withhold that information); (2) applying the wrong legal standard to the nexus element of her whistleblower defense; and (3) finding that the penalty of termination was reasonable.  See Pet'r's Mot. at 3.  USAID-OIG's cross-motion contends that "the three arguments advanced by [Iglesias] for reversing the decision are meritless."  Resp't's Cross-Mot. at 5.[7]  The Court will address each argument in turn.

## I. THE BOARD'S DISCOVERY RULINGS

### A. Order denying motion to compel disclosure of anonymous complainant

As described above, Iglesias moved to compel USAID-OIG witnesses to disclose the complainant's identity, arguing that the source of the anonymous complaint is crucial to proving her prima facie retaliation defense because its submission by someone with knowledge of Iglesias's disclosures would qualify as key circumstantial evidence of a nexus between the disclosures and the investigation.  See Pet'r's Mot. at 29 ("Iglesias'[s] inability to show that someone who knew of her disclosures influenced the investigation was fatal to her case.").  In opposing the motion to compel, USAID-OIG argued that it was prohibited by statute from disclosing the complainant's identity, citing the Inspector General Act of 1978 ("IGA"), 5 U.S.C. App. 3 § 7(b).  See A.R. at 4814.  Section 7(b) of the IGA provides that the Inspector General "shall not, after receipt of a complaint or information from an employee, disclose the identity of

---

[7] USAID-OIG's cross-motion for summary judgment also argues that Iglesias's proposed audit findings are not protected "disclosures" under the WPA.  See Resp't's Cross-Mot. at 14–22.  But in making that argument, USAID-OIG does not contend that the Board erred in concluding to the contrary.  Nor does USAID-OIG ask the Court to grant its cross-motion for summary judgment as a matter of law on that ground.  See id.  Instead, USAID-OIG acknowledges the Board's contrary decision and contends that "facts supporting" the conclusion that Iglesias "made no disclosures that qualified for protection under the [WPA]" are "relevant to the question of whether anyone would have had a retaliatory motive vis-à-vis [Iglesias]."  Resp't's Cross-Mot. at 14.  Because USAID-OIG does not argue the Board erred as a matter of law by finding that Iglesias's proposed findings qualified as protected "disclosures" under the WPA, the Court declines to consider that question.  Moreover, as discussed below, the Court agrees with the Board's finding that Iglesias failed to establish a nexus between any protected disclosure and her firing.  Hence, the Court has no need separately to consider whether the audit findings qualify as disclosures under the WPA.

the employee without the consent of the employee, unless the Inspector General determines such disclosure is unavoidable during the course of the investigation." 5 U.S.C. App. 3 § 7(b).

The Board's ruling "acknowledge[d] the conflict between [Iglesias's] desire to prove her whistleblower retaliation claim . . . and the OIG's significant need to protect the identities of its sources under the IGA,"[8] and settled on a solution that considered both parties' interests: requiring USAID-OIG to submit information revealing whether the source had any knowledge of Iglesias's protected disclosures for in camera review, and refraining, at least until receiving the answer, from requiring disclosure of the complainant's identity. A.R. at 5397–5400.

Iglesias now contends that, in crediting USAID-OIG's need to protect the source's identity "under the IGA," the Board misinterpreted the scope of section 7(b).[9] The term "employee" covers only USAID employees, Iglesias argues, not the auditors and investigators staffing the "independent" OIG unit within USAID where Iglesias (and potentially the source) worked. See Pet'r's Mot. at 26–30; Iglesias' Reply in Supp. of Mot. for Summ. J. & Opp'n to OIG's Cross-Mot. for Summ. J. ("Pet'r's Reply") [ECF No. 27] at 7–9. And because the "Board never asked[] and [USAID-OIG] never established" whether the source was a USAID employee or a USAID-

---

[8] The Board separately mentioned that the source of the complaint against Iglesias "could reasonably be assumed to be . . . a whistleblower" and so his or her identity was also independently protected under the WPA. A.R. at 5398 n.10. Iglesias does not challenge that finding.

[9] Iglesias also argues that the Board's decision to review information concerning the source's knowledge in camera was an abuse of discretion because no "extraordinary circumstance" justified precluding her from reviewing it and she had no "opportunity to respond" to or challenge the sufficiency of USAID-OIG's submission. See Pet'r's Mot. at 32–34. But shortly after reviewing that information in camera the Board revealed its substance to Iglesias in a supplemental discovery order, having "conclude[d] that it [was] appropriate to share [USAID-OIG'S] responses with [Iglesias] in order for her to make a decision about the viability of the [whistleblower defense]." A.R. at 5431–32. Iglesias thus had an opportunity to request the full submission and to respond in the parties' second round of briefs—which specifically addressed the whistleblower defense—but she declined to do so. See generally A.R. at 5957–94.

Iglesias further contends the in camera proceeding was an abuse of discretion because the Board relied on the information USAID-OIG provided. See Pet'r's Mot. at 33–35. But that goes to the Board's factual finding that Iglesias failed to meet her burden to establish a nexus, not to the propriety of the in camera proceeding. Iglesias does not argue that the Board lacked substantial evidence for its nexus finding, however, and even if she had, the Court would find the record sufficient to "satisfy a reasonable factfinder" that Iglesias failed to establish a nexus. Alden Leeds, Inc. v. NLRB., 812 F.3d 159, 165 (D.C. Cir. 2016); see Orion Reserves Ltd. P'ship v. Salazar, 553 F.3d 697, 704 (D.C. Cir. 2009) (describing "substantial evidence" standard).

14

OIG employee, the Board's reliance on section 7(b) to deny her motion to compel disclosure of the source's identity was, according to Iglesias, "contrary to law." Pet'r's Mot. at 27, 30. For its part, USAID-OIG responds that the "plain language" of section 7(b) "lends no support" to Iglesias's position because the provision makes no distinction between USAID employees and "USAID[-]OIG" employees. Resp't's Cross-Mot. at 32. The parties thus frame the question before the Court as one of statutory interpretation: does section 7(b) of the Inspector General Act prohibit USAID-OIG from disclosing the identity of a complainant even when the complainant is one of USAID-OIG's <u>own</u> employees?

But even though Iglesias and USAID-OIG briefed that statutory question at length before the Board, <u>see</u> A.R. at 4618–20, 4814–17, the Board did not answer it, <u>see</u> A.R. at 5397–400. Instead, in exercising its authority to manage discovery appropriately, the Board determined that the interests in favor of keeping the source anonymous outweighed the interests favoring disclosure—especially considering that the complainant's knowledge, not identity, was the crucial information for purposes of Iglesias's retaliation case.[10] <u>See</u> A.R. at 5432 n.2 (Board describing its discovery order as "grappl[ing] with the competing and conflicting interests of [Iglesias] and the agency"); A.R. at 6107 n.36 (Board's decision crediting OIG's "policy basis for declining to disclose the identity of th[e] [anonymous complainant]"); <u>see also</u> Pet'r's Mot. at 32 ("The Board . . . acknowledged that [the parties] have strong interests in the outcome, and chose a remedy it believed would solve the problem."). The Board then granted Iglesias's motion to compel

---

[10] As part of this analysis, the Board did "acknowledge[] . . . OIG's significant need to protect the identity of its sources under the IGA," A.R. at 5397–98. But such an acknowledgment is far from a decision construing § 7(b) to cover USAID-OIG employees. Indeed, despite the parties' emphasis on the statutory question, the Board never even considered whether the complainant was an "employee" within the meaning of that provision. As described below, the Board correctly determined that it had no need to interpret the scope of § 7(b) to determine whether disclosure of the complainant's identity was appropriate.

15

information relating only to the source's "knowledge of Ms. Iglesias' efforts to make negative audit findings in the South Africa . . . or the Madagascar . . . program[s]." A.R. at 5400.

The Court must treat the Board's determination concerning the appropriate extent of discovery with "extreme deference." Port Auth. of N.Y. & N.J. v. Dep't of Transp., 479 F.3d 21, 37 (D.C. Cir. 2007) (citation omitted); see also Trailways Lines, Inc. v. Interstate Commerce Comm'n, 766 F.2d 1537, 1546 (D.C. Cir. 1985) ("[T]he conduct and extent of discovery in agency proceedings is a matter ordinarily entrusted to the expert agency in the first instance and will not, barring the most extraordinary circumstances, warrant . . . overturning a reasoned agency decision.").

Reviewed under this deferential standard, the Court will not disturb the Board's well-reasoned order. The IGA's legislative history explains that the "protection of the complainant's identity is essential . . . to assure a free flow of information to the [Inspector General]" and "it is expected [that] the disclosure of a complainant's identity will be necessary only in the rarest of circumstances." S. Rep. 95-1071, at 36 (1978), as reprinted in 1978 U.S.C.A.A.N. 2676, 2711 (citation omitted). That statutory purpose plainly has some force irrespective of whether the source is an "employee" under section 7(b).[11]

Moreover, courts have recognized complainants' interest in remaining anonymous both in the context of the IGA and beyond. See McCutchen v. U.S. Dep't of Health & Human Servs., 30 F.3d 183, 189 (D.C. Cir. 1994) (allowing agency "to withhold the names of the complainants" based on their "strong privacy interest in remaining anonymous because, as 'whistle-blowers,'

---

[11] USAID-OIG states as much in each of its semi-annual reports to Congress, which note both that "OIG will not disclose the identity of an employee of USAID" under section 7(b) and that "[a]s a matter of policy, OIG provides comparable protection to . . . others who provide information to OIG and request confidentiality." E.g., USAID Office of Inspector General, Semiannual Report to Congress, October 1, 2017–March 31, 2018, at vii, available at https://oig.usaid.gov/sites/default/files/2018-06/sarc_03312018.pdf (last visited Sept. 28, 2018) (emphasis added).

they might face retaliation if their identities were revealed"); Kloeckner v. Perez, No. 4-804, 2014 WL 4912129, at *3 (E.D. Mo. Sept. 30, 2014) (denying motion to compel disclosure of the identity of an "OIG complainant" because the "interest in protecting the anonymity of the OIG complainant outweighs whatever probative value Plaintiff believes would result from disclosure"). That concern applies here as well.

It was well within the Board's discretion in fashioning its discovery order to recognize and afford significant weight to the interests in favor of keeping complainant's identity confidential— especially considering that the complainant did not consent to being named and that the complainant's knowledge, not his or her identity, was what was crucial to Iglesias's retaliation defense.[12] Accordingly, the Board did not err in denying Iglesias's motion to compel identification of the anonymous complainant.

## B. Refusal to draw an adverse inference

Iglesias argues, in addition, that the Board erred in failing to draw an "adverse inference" from USAID-OIG's refusal voluntarily to identify the complainant. See Pet'r's Mot. at 22–25. USAID-OIG's refusal, Iglesias contends, mandates an inference that the complainant had knowledge of—and thus a potential motive to retaliate for—Iglesias's protected disclosures. See Pet'r's Reply at 3–7.

To begin, the Court considers the circumstances under which an adverse inference is appropriate. As the D.C. Circuit has explained, the "adverse inference" or "missing evidence" rule

---

[12] Iglesias also argues that, even if § 7(b) does apply to the anonymous complainant, the Board separately erred by failing to require USAID-OIG to disclose his or her identity under the language in § 7(b) providing that a complainant's identity shall remain confidential "unless the [IG] determines such disclosure is unavoidable during the course of the investigation." Pet'r's Mot. at 26 (quoting 5 U.S.C. App. 3 § 7). As the Court has already explained, however, the Board's decision did not rest on interpreting § 7(b) to prohibit USAID-OIG's disclosure of the complainant's identity. The applicability of any purported "exception" therefore does not undermine the Board's finding. Moreover, § 7(b) grants the Inspector General discretion to determine whether such disclosure is "unavoidable" during the Inspector General's "investigation"—not, as Iglesias suggests, whether disclosure is "unavoidable" to prove her whistleblower defense.

"provides that when a party has relevant evidence within his control which he fails to produce, that failure gives rise to an inference that the evidence is unfavorable to him." Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. NLRB, 459 F.2d 1329, 1336 (D.C. Cir. 1972); see also Huthnance v. District of Columbia, 722 F.3d 371, 378 (D.C. Cir. 2013) ("The idea is that 'all other things being equal, a party will of his own volition introduce the strongest evidence available to prove his case.'" (citation omitted)). The rule does not, however, suggest that "any failure to introduce ostensibly relevant evidence warrants an adverse inference." Huthnance, 722 F.3d at 378. For example, an adverse inference is not warranted "when there are innocuous explanations for the party's failure to introduce the evidence." Id.; see also Int'l Union, 459 F.2d at 1336 ("These [adverse] inferences . . . cannot fairly be made except upon certain conditions; and they are also always open to explanation by circumstances which make some other hypothesis a more natural one than the party's fear of exposure." (quoting 2 J. Wigmore, Evidence § 285 (3d ed. 1940))). Nor is an adverse inference warranted when the omission at issue does not consist of "relevant and important evidence." Covad Commc'ns Co. v. FCC, 450 F.3d 528, 543 n.7 (D.C. Cir. 2006) (citation omitted). Finally, "whether to draw [an adverse] inference is a matter of discretion," although agencies are generally "required to obey the minimal requirements of rationality" in making that determination. Int'l Union, 459 F.2d at 1339.

With those principles in mind, the Court finds no error. The Board explained that it "decline[d] to draw a negative inference . . . [because] the OIG had a sound legal and policy basis for declining to disclose the identity of [the anonymous complainant]" and because "the agency advised that the informant was asked and declined to have his/her identity revealed." A.R. at 6107 n.36. The Board did not abuse its discretion in crediting those alternative, rational reasons for withholding the complainant's identity as opposed to "fear of exposure." As already explained,

18

USAID-OIG has a cognizable interest in maintaining the confidentiality of its sources under the IGA and otherwise. Moreover, considering that the Board found no evidence of any connection between Iglesias's protected disclosures and the investigation or her removal—including, but not exclusively, based on USAID-OIG's submission revealing that the anonymous complainant had no such knowledge—it is unclear how the complainant's identity remained sufficiently "relevant or important" to compel an adverse inference. See Covad, 450 F.3d at 543 n.7 (citation omitted).

Finally, although Iglesias cites International Union, that case does not support her position. There, an adverse inference was found warranted in response to a party's "naked, willful suppression of . . . documents" in defiance of a subpoena. Int'l Union, 459 F.2d at 1332. And "[t]he only rational inference" from the party's "unexplained nonproduction," the court found, was that the documents withheld were fatal to that party's case. Id. at 1347 (emphasis added). No similar facts or intransigence are present here. Instead, USAID-OIG complied with the Board's discovery orders and had good reasons not to disclose voluntarily the complainant's identity.[13]

## II. THE BOARD'S NEXUS FINDING

As described above, the Board found that Iglesias met the first two elements of her prima facie case asserting a whistleblower defense—protected disclosures (negative audit findings) and

---

[13] Iglesias briefly makes two additional arguments. First, she argues that "the Board's decision on this issue was arbitrary" because it failed to offer "rational reasons" for its decision. Pet'r's Mot. at 25 (citation omitted). The Court disagrees. As noted, the Board offered at least two plausible reasons for declining to draw an adverse inference. See A.R. at 6107 n.36. And even if the Board "could have explained [its] reasons for rejecting [Iglesias's] arguments in more detail, . . . [a] reviewing court will 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" Accrediting Council for Indep. Colls. & Sch. v. DeVos, 303 F. Supp. 3d 77, 111–12 (D.D.C. 2018) (citation omitted). The Board's decision easily clears that hurdle.

Second, in a brief aside, Iglesias separately states that the Board's failure to draw an adverse inference deprived her of essential "due process rights," including the right to "confront her accusers and to access all of the information upon which the [A]gency's action is based." Pet'r's Mot. at 22 (citing regulations providing for a party's right to request access to relevant agency records and to call relevant witnesses). But beyond the "abuse of discretion" already discussed, Iglesias does not explain how her due process rights (or the cited regulations) were violated. See Pet'r's Mot. at 22. The Court thus "need not, and will not, address" separately this "[p]erfunctory and undeveloped argument[]." Robinson v. Farley, 264 F. Supp. 3d 154, 162 (D.D.C. 2017) (citation omitted); see also Am. Freedom Def. Initiative v. Wash. Metro. Area Transit Auth., 901 F.3d 356, 369 n.6 (D.C. Cir. 2018) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work." (citation omitted)).

19

a personnel action (her removal)—but failed to establish the third and final element—a nexus between her protected disclosures and the adverse personnel action. See A.R. at 6102–11. The second legal error Iglesias asserts is that the Board applied the wrong legal standard in making that nexus finding. See Pet'r's Mot. at 35–40.

To establish the requisite nexus for a prima facie whistleblower defense, a covered employee need only demonstrate that the disclosure was a "contributing factor" in the subsequent adverse personnel action. See Kerrigan v. Merit Sys. Prot. Bd., 833 F.3d 1349, 1354 (Fed. Cir. 2016). Courts have construed "contributing factor" broadly to capture "any factor which, alone or in connection with other factors, tends to affect in any way the outcome of the [adverse personnel] decision." Marano v. Dep't of Justice, 2 F.3d 1137, 1140 (Fed. Cir. 1993) (quoting 135 Cong. Rec. 5033 (1989) (explanatory statement on S. 20)).[14]

Iglesias does not dispute that the Board correctly stated the applicable standard. See Pet'r's Reply at 10; see also A.R. at 6105–06 (Board will consider "direct and circumstantial" evidence to determine whether the "disclosures were a contributing factor in the decision to investigate or remove Mrs. Iglesias," including whether any "individual with knowledge of the protected disclosures influenced the decisionmaker"). Rather, Iglesias claims that the Board effectively "did

---

[14] USAID-OIG argues that after passage of the Whistleblower Protection Enhancement Act of 2012 ("WPEA"), Pub. L. No. 112-199, 126 Stat. 1465 (2012), the broad "contributing factor" test no longer applies to auditors who engage in the disclosure of gross waste and mismanagement as part of their routine job duties. See Reply Mem. in Supp. of Def.'s Cross-Mot. for Summ. J. ("Resp't's Reply") [ECF No. 31] at 7–8. The WPEA amended the WPA to include 5 U.S.C. § 2302(f)(2), which states that when "a disclosure is made during the normal course of duties of an employee," as here, any adverse personnel action must, to qualify as retaliatory, be "in reprisal" for the disclosure—not just because of it. § 101, 126 Stat. at 1466. USAID-OIG takes this to mean that Congress intended to foreclose auditors from establishing a prima facie whistleblower defense without presenting evidence of retaliatory motive. See Resp't's Reply at 7. Iglesias disagrees, arguing that the broad contributing-factor test still applies. See Pet'r's Reply at 23–25. Although both parties presented similar arguments before the Board, the Board deemed it unnecessary to decide the issue because Iglesias cannot establish a nexus under even the lower, contributing-factor, standard. See A.R. at 6090 n.16. This Court will take the same approach. Because the Court finds that Iglesias fails to "establish the lesser standard of proving 'contribution [to the decision to remove her],'" she "by definition, [fails to] prove the greater standard of 'retaliatory motive.'" Id.

not <u>apply</u>" that standard when it found no nexus despite concluding that the investigation was "unusual enough to suggest some negative animus against Mrs. Iglesias." Pet'r's Reply at 10–12 (citation omitted).[15] In drawing that conclusion despite its "negative animus" finding, Iglesias argues, the Board implicitly required her to establish a nexus using "direct" rather than "circumstantial" evidence, and thus committed legal error. <u>Id.</u> at 10–11.

The Court disagrees. The Board found "<u>no evidence at all</u> of a nexus" "[n]otwithstanding th[e] mosaic of possibly negative feelings toward Mrs. Iglesias." A.R. at 6110 n.38 (emphases added). Put another way, although the Board found some evidence suggestive of animus generally, it found no evidence connecting that animus, whether circumstantial or otherwise, to the disclosures asserted—<u>i.e.</u>, to certain proposed findings in the South Africa and Madagascar audits. A.R. at 6110. On the contrary, the Board cited evidence that negative feelings toward Iglesias, and perhaps the vigor of the investigation, stemmed from a source having nothing to do with those audit findings: her supervisors' lack of "trust" in her because the allowances she sought were often "unusual." A.R. at 6108 n.37.[16] In asserting that such a finding is a legal, not factual, error, Iglesias asks the Court to rule that evidence of any animus is, without more, sufficient circumstantial evidence that certain protected disclosures "contributed to" an adverse personnel action. The Court declines to do so. The core of the nexus element is a "connection"—even if

---

[15] Iglesias also argues that there was "significant circumstantial evidence" that the U.S. Ambassador to South Africa at the time had knowledge of her protected disclosures and was subsequently involved in her investigation and dismissal. Pet'r's Mot. at 39. The Board rejected that contention, however, finding no evidence that the Ambassador had any knowledge of the disclosures or involvement with the subsequent investigation. <u>See</u> A.R. at 6110. Iglesias does not explain how that finding evidenced a misapplication of the legal standard and does not challenge it for lack of substantial evidence. Accordingly, the Court defers to the Board's factual finding.

[16] The Court notes that the Board's finding is further corroborated by Iglesias's own initial response to USAID-OIG's proposal to remove her, in which she made no mention of her proposed audit findings and, instead, claimed she was fired for other reasons not at issue here. <u>See</u> A.R. at 21–22. Specifically, Iglesias originally claimed that SA Cherer "harbored ill feelings toward her" because she once reported to a supervisor an allegation that he improperly followed a female employee. A.R. at 21–22. And RIG Byrne demonstrated personal bias, Iglesias claimed, when Byrne identified Iglesias's accented English "as a barrier to [Iglesias's] work." A.R. at 22.

circumstantial—between specific asserted disclosures and the personnel action; animus stemming from any source is not, on its own, evidence of such a connection.

Hence, the Court finds that the Board applied the proper legal standard to its nexus finding. Because the Court finds no other error or abuse of discretion, the conclusion that Iglesias failed to make out a prima facie case of whistleblower retaliation will be upheld.

## III. PENALTY

Finally, Iglesias challenges the Board's decision to uphold the penalty imposed by USAID-OIG for her conduct: removal from the Foreign Service. Pet'r's Mot. at 41–43. As both parties recognize, the Board's review was limited to ensuring that USAID-OIG's chosen punishment falls "within a zone of reasonableness" and is "consistent with a consideration of" certain relevant factors outlined in Douglas v. Veterans Administration, 5 M.S.P.B. 313, 330–332 (1981). Grievant v. Dep't of State, F.S.G.B. No. 2014-022(E), 2015 WL 5695292, at *11 (July 29, 2015). There are seventeen so-called "Douglas factors" incorporated, with some modifications, into a regulation found in the Foreign Affairs Manual ("FAM"),[17] including "the nature of the offense," "[i]ntent," the "nature or relationship between [the employee's] behavior and [her] official responsibilities [and the] sensitivity of [the] position," "[r]ecord of cooperativeness," "[o]ther mitigating or extenuating circumstances," and "[c]onsistency of the penalty with those imposed upon other

---

[17] The FAM is the "single, comprehensive, and authoritative source for the [Department of State's] . . . structures, policies, and procedures." U.S. Dep't of State, Foreign Affairs Manual and Handbook, https://fam.state.gov/ (last visited Oct. 5, 2018). The Automated Directives System ("ADS"), which governs USAID-OIG policies and procedures, incorporates FAM's disciplinary procedures by reference. See USAID, ADS Ch. 485, Disciplinary Action – Foreign Serv. § 485.3 (Sept. 17, 2015), https://www.usaid.gov/sites/default/files/documents/1877/485.pdf.

employees for similar offenses." Grievant v. Dep't of State, F.S.G.B. 2016-038(E), 2018 WL 3546641, at *15 n.6 (Mar. 1, 2018) (citation omitted).

Iglesias argues that the Board erred in finding USAID-OIG's punishment "reasonable" because the deciding official (AIG Carroll) offered "no evidence" that other employees faced removal for similar conduct, impermissibly shifted the burden to Iglesias to prove removal was unreasonable, and otherwise insufficiently weighed facts favoring a less serious penalty, including that Iglesias had "no intention to defraud USAID" and had "worked on a number of high profile audits." Pet'r's Mot. at 42–43 (citations omitted). Moreover, Iglesias contends, the penalty is unreasonable because her failure to submit accurate vouchers is "no different than the error[s] committed by the agency in failing to discover her mistake[s]." Pet'r's Reply at 14.

USAID-OIG responds that the Board properly concluded that, while harsh, the penalty imposed is reasonable. See Resp't's Cross-Mot. at 35–37. This is especially so, the Agency argues, because Iglesias intentionally submitted false reimbursement forms to the USAID-OIG office while simultaneously occupying a position dedicated to rooting "out waste, fraud and abuse in USAID programs." Id. at 35. And despite Iglesias's suggestion to the contrary, USAID-OIG contends that the Board correctly "concluded that [the agency's] consideration of the factors under Douglas[] was satisfactory." Id. at 36. USAID-OIG also points to aggravating circumstances the Board relied on to bolster its finding, including that Iglesias "expressed no remorse," "excused her conduct as being the fault of others," and blamed her employer and husband for not catching her mistakes. Id. at 37 (quoting A.R. at 6113).

The Court agrees with USAID-OIG. The Board did not abuse its discretion or commit legal error in sustaining USAID-OIG's decision to remove Iglesias as "reasonable." As an auditor charged with investigating and preventing fraud, Iglesias enjoyed a "position of considerable trust"

23

demanding a "uniquely high standard of conduct." A.R. at 9. The misconduct proven here—including repeated, intentional, submission of false reimbursement vouchers accruing to Iglesias's financial benefit—falls well below that standard; indeed, it runs directly counter to USAID-OIG's mission and undermines confidence in the OIG's integrity. See A.R. at 6113. Removal is thus well-within the "zone of reasonableness" for the charged conduct.

Moreover, contrary to Iglesias's suggestion, USAID-OIG sufficiently considered the relevant Douglas factors, including "the nature of [Iglesias's] position as a Foreign Service Auditor, the nature and severity of the offenses cited in relation to [her] duties, [her] job level and fiduciary role in the OIG organization, [her] job performance, and the consistency of the penalty with [other listed penalties in the Foreign Affairs Manual]," before rendering a decision. A.R. at 9; see A.R. at 6112–13. USAID-OIG also considered intent, another Douglas factor, finding that Iglesias's financial submissions were part of "a pervasive pattern of dishonest and unethical behavior for personal gain." See A.R. at 107.

While Iglesias is correct that one of the seventeen factors described in the Foreign Affairs Manual mentions consistency of the penalty with those imposed upon other employees, and USAID-OIG could not specifically identify any directly analogous case, such failure does not, considering USAID-OIG's detailed discussion of the relevant Douglas factors, undermine the Board's reasonableness finding. See Douglas, 5 M.S.P.B. at 306 (describing the Board's obligation as to ensure the agency "did conscientiously consider the relevant factors and . . . strike a responsible balance within tolerable limits of reasonableness").[18]

---

[18] Iglesias's argument that the Board unlawfully shifted the burden to Iglesias to prove the penalty was unreasonable, when it is USAID-OIG's burden to prove that it was reasonable, is unsupported. The Board was explicit both that "[i]n order to establish that a penalty is reasonable, the agency must consider [certain] relevant factors" and that USAID-OIG did, in fact, satisfy its "obligation" to "consider the Douglas factors," "consider[] the evidence," "review[] whether there had been a penalty imposed for similar behavior," and "carefully consider[] both aggravating

24

Iglesias's remaining arguments either misconstrue as "mitigating factors" factual claims about her conduct that were already decided against her, see, e.g., Pet'r's Mot. at 43 (citing as a "mitigating factor" that Iglesias "had no intention" to submit falsified vouchers), or otherwise unpersuasively attempt to shift the burden to USAID-OIG for Iglesias's misconduct, see, e.g., Pet'r's Reply at 14 (arguing the punishment is unreasonable because it was USAID-OIG's responsibility to "catch[] [Iglesias's] mistake[s] and bring[] [them] to her attention immediately"). Those arguments are rejected.

Hence, the Court finds no error in the Board's decision finding USAID-OIG's penalty "reasonable," and Iglesias's removal from the Foreign Service will be upheld.

## CONCLUSION

For the foregoing reasons, and upon consideration of the parties' motions, the parties' briefing, applicable law, and the entire record herein, the Court will deny Iglesias's motion for summary judgment and grant USAID-OIG's cross-motion for summary judgment. A separate order will issue on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: October 12, 2018

---

and mitigating factors." A.R. at 6111–14 (emphasis added). Iglesias's only evidence to the contrary is the Board's comment that, even though USAID-OIG could not find an analogous case with a similar punishment, neither was Iglesias able to find an analogous case with a different punishment. But that did not shift the burden to Iglesias to produce such cases; instead, it was the Board's way of pointing out the weakness of Iglesias's argument that USAID-OIG's failure to find a relevant, analogous case with similar penalties warrants concluding that the penalty is unusual or inappropriate here.

25